

**OFFICE OF**

# THE ATTORNEY GENERAL

**AUSTIN, TEXAS**

Gerald C. Mann

~~PROSECUTING~~
ATTORNEY GENERAL.

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

> Opinion No. O-3594
> Re: Construction of Art. XV, House
> Bill No. 8, Acts, Regular Ses-
> sion, Forty-seventh Legislature,
> levying an excise stamp tax up-
> on stock transfers.

Dear Sir:

Your letter of May 24, 1941, submits for our opinion certain inquiries regarding the incidence and application of the excise stamp tax levied upon stock transfers by Art. XV, House Bill No. 8, Acts, Regular Session, Forty-seventh Legislature. To this end, you attach a list of questions and copy of a letter of date May 19, 1941, addressed to you by Smithdeal & Lefkovitz, attorneys of Dallas, Texas. To avoid confusion and promote clarity, if possible, each of such questions will be stated in connection with our discussion and conclusion thereon.

Your first question is as follows:

> "Does the tax apply to an original issue
> of stock, that is, the issuance by a corpora-
> tion of shares of stock to the persons who sub-
> scribed therefor?"

Section 1 of Art. XV, House Bill No. 8, Acts, Regular Session, Forty-seventh Legislature, levies the following tax:

> "There is hereby imposed and levied a tax
> as hereinafter provided on all sales, agreements
> to sell, or memoranda of sales, and all deliver-
> ies or transfers of shares, or certificates of

Hon. George H. Sheppard, Page 2

stock, or certificates for rights to stock, or certificates of deposit representing an interest in or representing certificates made taxable under this Section in any domestic or foreign association, company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date hereof, whether made upon or shown by the books of the association, company, corporation, or trustee, or by any assignment in blank or by any delivery of any papers or agreement or memorandum or other evidence of sale or transfer or order for or agreement to buy, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to such stock or other certificate taxable hereunder, or with the possession or use thereof for any purpose, or to secure the future payment of money or the future transfer of any such stock, or certificate, on each hundred dollars of face value of fraction thereof, three (3) cents, except in cases where the shares or certificates are issued without designated monetary value, in which case the tax shall be at the rate of three (3) cents for each and every share. It shall be the duty of the person or persons making or effectuating the sale or transfer to procure, affix, and cancel the stamps and pay the tax provided by this Article. * * * "

We find nothing in the quoted language to indicate a legislative intent to tax an original issue of stock, authorized under the corporation's charter and issued pursuant to subscription contracts. The intention is manifest, rather, to place this excise tax burden upon the person, firm or corporation making or effectuating a taxable sale or transfer of outstanding shares or certificates of stock rather than upon the corporation whose stock is trafficked in. This same interpretation has been placed upon similar tax levies of the states of New York and Pennsylvania by the administrative departments charged with the enforcement of such measures, and

Hon. George H. Sheppard, Page 3

by the courts. See PEOPLE v. DUFFY-McINNERNY CO., 106 N.Y. Supplement, 878; affirmed, Court of Appeals, 86 N.E.1129.

This conclusion as to the non-taxability of original issue stock does not extend to and embrace treasury stock, so-called, which has been once outstanding in the hands of the public and has been purchased by the corporation for resale. Such stock is not original issue stock and is taxable.

Your second question is stated as follows:

"Does the tax apply to the transfer of stock on the books of the corporation or of its transfer agent where no other part of the transaction is taxable?

"EXAMPLE NO. 1: A New York resident sells stock to another New York resident, the sale being initiated and consummated in New York. The purchaser sends the stock for transfer to the office of the corporation or its transfer agent in Texas.

"EXAMPLE NO. 2: A sale in Texas between Texas residents was completed before the Act went into effect, but the certificate was not presented for transfer until after it went into effect."

All of that portion of your second question except "example No. 2" is specifically answered in our opinion No. O-3713, directed to you, and we respectfully refer you to same.

Our answer to "example No. 2" of your second question is that a sale in Texas between Texas residents of shares or certificates of stock, executed prior to the effective date of the stock transfer tax act under consideration here, would not be taxable thereunder, because, to do so would be to give the statute a retroactive and, therefore, unconstitutional effect. However no such constitutional objection lies to the taxation of a transfer, in Texas, of such shares or certificates upon the books of the corporation or by its

transfer agent, subsequent to the effective date of said Act; and, since such transfer is one of the independent transactions which is made taxable, regardless of the performance or execution in Texas of the other named acts, transactions, agreements or contracts, we think it patent that the Legislature intended to tax such transfers as occurred after the passage of the Act.

Your third question reads as follows:

"When two or more steps in the sale and transfer of stock take place in Texas, is it the intention of the statute that only one tax shall be collected on the transaction, regardless of the number of steps in the transaction and the length of time elapsing between the execution of the agreement and the transfer of the stock on the books of the corporation?

"EXAMPLE: A and B are both Texas residents. They sign an agreement whereby A agrees to sell to B 100 shares of stock; the next day the sale is consummated; the stock is delivered to B; and B has it transferred on the books of the issuing corporation in Dallas. Is a separate tax imposed on the agreement to sell, the sale, the delivery and the transfer, or is the transaction viewed as a whole and only one tax imposed?"

We believe you will find that this question has been adequately and affirmatively answered in our opinion No. O-3713, addressed to you, and we, therefore, refer you to same without further discussion here.

By Subdivision (a) of your fourth question you desire to know if the following transaction is taxable:

"(a) A, a resident of Dallas, carries on the following conversation by teletype with B, a resident of New York:

"A: 'How are you quoting XYZ stock?'

"B: 'Market 112 bid 113 asked.'

Hon. George H. Sheppard, Page 5

"A: 'Will take 100 shares at 112-3/4.'

"B: 'Sorry 113 best.'

"A: ' O K we buy 100 shares at 113.
        Please confirm remitting direct with
        transfer instructions.'

"B immediately sends A by mail the follow-
ing confirmation:

                    "'B, Inc.
New York

                            Order accepted
                            May 24, 1941

"'A
Dallas, Texas

    "'We take pleasure in accepting your order
and hereby SELL to you today:

"'No. of shares         Security         Price
        100         XYZ Corporation   $1130.00

"'Note: In this transaction we do not act as
        your broker, but as dealer for our own
        account. This bill is payable upon re-
        ceipt.'

    "At the same time A likewise confirms the
purchase and sends the following confirmation
to B by wire:

                    "'A
Dallas, Texas

                            Date May 24, 1941

"'B, Inc.
New York, N.Y.

        "'We as principals, confirm PURCHASE FROM

Hon. George H. Sheppard, Page 6

YOU of the following securities:

"'No. of shares     Security              Price
     100           XYZ Corporation     $1130.00

"'Mail street name to us New York exchange for $1130.00 attached hereto.'

"Upon receipt of A's check, B mails the stock certificates to A, who receives them in Dallas."

As more fully pointed out in our opinion No. 0-3713, Section 1 of Article XV, House Bill No. 8, Acts, Regular Session, Forty-seventh Legislature, levies and imposes an excise stamp tax upon one, but only one, of the following transactions:

1. An executory contract or agreement to sell shares or certificates of stock, whether oral or evidenced by the "bill or memorandum of sale" required by Section 1 of the Act, or,

2. An executed contract of sale of shares or certificate of stock, whether oral or evidenced by the "bill or memorandum of sale" required by Section 1 of the Act, or,

3. A delivery of shares or certificates of stock, or

4. A transfer of shares or certificates of stock upon the official books and records of the corporation.

It was further pointed out that under fundamental principles of law and comity the excise stamp tax in question has no extra-territorial operation and no tax would accrue if all of the above enumerated transactions or acts transpired beyond the limits of the state. On the other hand, if only one of such acts or transactions transpires within the state the tax accrues even though all of the others occur outside the state. But if all

of such taxable transactions or acts occur within the state of Texas, the excise tax will not cumulate but will rest upon only one of such taxable transactions or acts.

Contracts for the sale of stock are governed by the same legal principles as other contracts. As with other contracts the minds of the buyer and seller must meet as to the price of the stock, the terms of delivery and the payment. The offer of the seller is not binding upon him unless accepted by the other party. The absolute acceptance of an offer without conditions, results in an executory contract with a mutuality of obligations and remedies. Where an offer is accepted by a party it is not necessary for the person making the offer to accept the acceptance. Mutual promises to sell and purchase stock are a sufficient consideration to support the agreement. An executory contract of sale becomes executed by a timely and the proper tender of the stock. The validity of a contract for the sale of stock is governed by the laws of the state in which the contract is made (See generally, volume 5, THOMPSON ON CORPORATIONS, Third Edition, Sections 4105, 4106, 4116, 4121 and 4126).

Is any one of the four taxable events or transactions named in the Act and above, present under this special factual situation IV-a and these general principles of law, so as to accrue a tax?

The offer to purchase stock was made by a resident of Texas, ("A") but such offer was accepted in New York by a resident thereof ("B") and confirmed by mail. The subsequent confirmation of the purchase by "A" by wire, although probably necessary according to usages of the trade, was unnecessary under the law of contracts to complete a binding and absolute agreement or contract to sell. In fact, it was nothing more than an acceptance of an acceptance which is not necessary to create mutuality of obligations.

Therefore, prior to the delivery of the stock to purchaser "A" and receipt of the purchase money therefor by seller "B", only an executory agreement or contract to sell the designated shares existed. Such

Hon. George H. Sheppard, Page 8

executory agreement, however, was an absolute contract
and not a sale on condition or an option contract. It
was a binding contract with mutuality of obligation and
was clearly the "agreement to sell" which was made tax-
able under the Act, if it occurred in Texas.

Generally speaking, the place of making a con-
tract, including an executory contract to sell stock,
is determined according to the parties' intention; as
a rule, it is considered to be the place where the offer
is accepted, or where the last act necessary to a meet-
ing of the minds or to complete the contract is per-
formed.

17 C.J.S. 813, Section 356;
11 American Jur. 394, Section 111.

Under facts substantially identical to the instant case,
but involving an agreement to sell stock between a citi-
zen of New York and a citizen of Pennsylvania, the court
held that the "agreement to sell" was made in New York,
preliminary to the sending of the certificate to Pennsyl-
vania. O'KANE, Jr., ET AL vs. STATE OF NEW YORK, 16 NYS
(2d) 520; affirmed, Court of Appeals, 28 NE (2d) 905.

Therefore, we hold that the "agreement to sell"
in the present case was executed in New York and there-
fore not taxable under the Texas Act. But in addition
to an "agreement to sell", the instant factual situation
includes an executed "sale" of shares or certificates of
stock and a "delivery" of shares or certificates, two of
the taxable transactions or acts named in the statute.
Therefore, we must next determine whether or not either
or both of such transactions occurred within the state
of Texas so as to be subject to this tax measure.

As determining the place where an executed con-
tract of sale is made, as distinguished from an executory
contract or agreement to sell, above discussed, we state
the following rule from 11 American Jur. 395, Section
113:

"Delivery of the property is generally,

Hon. George H. Sheppard, Page 9

though not necessarily, the act by which an
executory contract becomes an executed con-
tract. Therefore, in such case, the place of
delivery is generally the place where the ex-
ecuted contract is deemed to have been made."

In determining the place of delivery of proper-
ty (and stock has been held to be property) we quote
from the leading case of ALEXANDER vs. HEINDENHEIMER, 221
S. W. 942, wherein the Commission of Appeals said:

"It is an established rule of law that,
when property is delivered to a carrier by the
vendor as directed by the vendee, or where the
contract is silent as to the place of delivery,
delivery to the carrier operates as delivery
to the vendee and passes title to him."

This rule finds support in the statement of the
general rule and authorities cited at 37 Tex. Jur. 374,
Section 166; ADKINS-POLK CO. vs. JOHN BARKLEY & CO., 297
S. W. 757.

Under the facts before us, delivery of the stock
certificate was made by the seller "B" by depositing same
in the United States Mails in New York forwarding to the
purchaser "A" in Texas, after receipt of the purchase
money in New York. We think under the above principles
and specific authorities (17 C.J.S. 403), as well as un-
der the express direction of the purchaser in Texas, the
United States Mails, in this instance, was constituted
the agent of the purchaser, "A" and therefore delivery
of the certificates by the seller, "B", into the Mails
in New York was tantamount to delivery of such shares or
certificates in New York. Hence, the delivery of such
shares which converted the executory agreement or con-
tract of sale into an executed contract of sale, trans-
pired extrastate. Therefore, neither the "delivery" of
such certificate nor the "sale" which it completed, was
a taxable transaction in Texas.

The only other remaining taxable act or trans-
action enumerated in the statute is the "transfer" of
such shares or certificates of stock upon the books of

Hon. George H. Sheppard, Page 10

the corporation, so as to pass legal title from the seller or transferrer to the vendee or transferree. It does not appear from the facts stated under your fourth question whether or not the shares involved were the shares or certificates of a domestic or foreign corporation, or whether or not such shares or certificates were transferred within the state of Texas, and hence we do not pass upon the question of whether or not a taxable "transfer" is present.

You next desire to know if the transaction described under your question No. IV-b is taxable. We quote:

"(b)  This situation is identical with the one outlined above except as to the method of payment for, and delivery of, stock. In this situation, A'S last message to B reads as follows:

"A:  'O K we buy 100 shares at 113.  Please confirm.  Deliver street name to Chase National New York for our account against payment.'

"B confirms the sale exactly as in the first illustration and A confirms his purchase as in the first illustration except that instead of saying

"'Mail street name to us New York Exchange for $1130.00 attached hereto,'

"A'S confirmation says:

"'Deliver in street name to Chase National Bank for our account against payment.'

"A then sends the purchase price to the Chase National Bank, New York City, and upon receipt thereof the bank mails the stock to A."

The alteration in the manner of the delivery of the stock and payment therefor from that followed under

Hon. George H. Sheppard, Page 11

the facts appearing in subdivision (a) of your fourth
question does not require or justify a different con-
clusion. The same legal principles discussed in con-
nection with your question No. IV-a will apply to this
question, because the only change in the facts is that
the Chase National Bank of New York is substituted for
the United States Mails as the agent purchaser of "A",
to first receive the certificates of stock from seller,
"B", in New York. Therefore, the "agreement to sell,"
the "sale" and the "delivery" of the shares or certifi-
cates of stock all occurred extrastate so as to be non-
taxable. For reasons stated under the foregoing ques-
tion, we do not pass upon the taxability of a subsequent
transfer of such shares upon the books of the corpora-
tion, because the facts are not furnished us in this
regard.

By subdivision (c) of your fourth question you
desire to know if the following transaction is taxable:

"(c) This situation is identical with the
two illustrations given above except as to the
method of payment for, and delivery of, stock.
In this situation, A's last message reads:

"' O K we buy 100 shares at 113. Please
confirm. Ship street name by draft Dal-
las National.'

"B confirms the sale exactly as in the
first and second illustrations, and A confirms
his purchase as in the first illustration, ex-
cept that instead of saying

"'Mail street name to us. New York Ex-
change for $1130.00 attached hereto,'

"A's confirmation says:

"'Ship in street name by draft on us
through Dallas National Bank.'

"B then attaches the stock certificate to
his draft on A, who pays the draft and receives
the stock when the draft is presented for pay-
ment."

Hon. George H. Sheppard, Page 12

In this instance the change in the method of payment for and delivery of the shares or certificates of stock calls for a different application of the legal principles discussed, and, in our conclusion, results in the taxability of such transaction. It is true that, as in the cases of subdivisions (a) and (b) of your fourth question, the "agreement to sell" was consummated extrastate so as not to be taxable; but under the given method of payment and delivery which completed the contract of sale, such "sale" of the shares or certificates of stock, as well as the "delivery" thereof occurred within the state of Texas, so as to make one or the other, but not both, of such transactions taxable.

Under subdivisions (a) and (b), the Texas purchaser, "A", had, in contemplation of law, an agent in New York in the United States Mails and in the Chase National Bank, respectively, to receive such shares for him in New York; but under the facts of subdivision (c), no New York agent of "A" is present to receive the stock and pass title thereto in that state, but, on the contrary, title to the stock does not pass until after the receipt of the certificates by the Dallas National Bank and the honoring, by "A", of the draft thereto attached. In other words, the Dallas National Bank is the agent of "B", the New York seller, rather than of "A", the Texas purchaser, and therefore a taxable "sale" or "delivery" of the shares or certificates occurred in this State.

Your fifth question with its subdivisions (a), (b), and (c) is quoted as follows:

"Suppose that in the situations outlined in Question IV the transaction was initiated by B, who made an offer by teletype to sell the stock to A, so that the teletype conversation down to the point of the instructions for delivery and payment was as follows:

"B: 'We offer you 100 shares XYZ stock at 113.'

"A: 'Will take 100 shares at 112-3/4.'

"B: 'Sorry 113 best.'

Hon. George H. Sheppard, Page 13


"A: 'O K we buy 100 shares at 113.'

"(a) With this modification, and assuming
that otherwise the transaction was identical
with that stated in (a) of Question IV, would
the transaction be taxable?

"(b) With this modification, and assuming
that otherwise the transaction was identical
with that stated in (b) of Question IV, would
the transaction be taxable?

"(c) With this modification, and assuming
that otherwise the transaction was identical
with that stated in (c) of Question IV, would
the transaction be taxable?"

This factual situation presents the converse of
that appearing in your fourth question, regarding the
executory agreement or contract to sell shares or cer-
tificates of stock. Here the offer to sell is made by
"B", the New York seller, and the acceptance of such of-
fer is made by "A", the purchaser in Texas. Thus the
acceptance of an offer which completes the obligation
and mutuality of the contract or agreement takes place
in Texas rather than in New York, so as to accrue the
excise stamp tax on one of the taxable transactions or
events mentioned in the statute, i.e., an "agreement
to sell."

We reach this conclusion despite the conten-
tion that the tax levy is upon the sale or agreement to
sell rather than upon a purchase or agreement to pur-
chase stock, and under this hypothetical case, only a
purchase is involved in Texas. It should be ever kept
in mind that the tax levy under consideration is, actu-
ally and fundamentally, an excise tax upon the privilege
of transferring shares or certificates of stock. The
term "transfer" is used here in its broad and comprehen-
sive sense to mean the passing of the legal or equit-
able title to shares or certificates of stock from one
person to another, by sale or gift, rather than the
narrower meaning of the mere recording of such transfer
upon the stock transfer records of the corporation. It

is true this tax levy specifically imposes the tax on all "sales", "agreements to sell", or "memoranda of sales" and all "deliveries" or "transfers" of shares or certificates of stock, but these are merely steps in the completed transfer of shares or certificates from one stockholder to another. Hence, the argument is not tenable that this excise tax levy is upon the sale of stock rather than upon the purchase of stock. The terms "sale" and "agreement to sell" comprehend a purchase of stock as well as a sale, whether the contract is executed or executory, because there cannot be, contractually, a seller without a purchaser and vice versa. Therefore, we say a taxable "agreement to sell" did occur in Texas, although the seller resided in New York.

This one taxable transaction or act being present, it matters not that under the circumstances of the delivery of the shares or certificates and the payment therefor, under subdivisions (a) and (b), the "sale" and "delivery" of such shares or certificates occurred, as under IV-a and (b), in New York rather than Texas. One taxable transaction or act will suffice to accrue the tax even though all other taxable transactions or events designated in the tax levy transpire extrastate. However, for the reasons stated in our discussion under your question IV-c, there is present, in connection with the facts of the delivery of and payment for the stock under subdivision (c) of your fifth question, two additions taxable transactions or events, namely, an executed "sale" of the shares or certificates in Texas and a "delivery" of such certificates in Texas.

To fully state the important and essential facts of your next question we quote same from the attached letter to you of date May 19, 1941, from Smithdeal & Lefkowitz, attorneys of Dallas, Texas:

"We represent some brokers who are members of the New York Exchange. They take offers to sell at their several offices in Texas and transmit them by wire to New York. If the offers are accepted, a report of the sale is telegraphed to the Texas office and a confirmation mailed to

the customer. If the stocks are sold and the customer has possession of the certificates, they are delivered to the Texas office and forwarded by the Texas office to the place where the sale is made. A receipt is given to the customer for the certificates. The Texas office does not make an agreement with the customer to sell the stocks. It impliedly agrees to transmit the offer. In some cases the price asked for the stocks can not be obtained, and the offer is not accepted. In most instances the stocks are sold.

"House Bill 8 undertakes to levy a tax on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares or certificates of stock, whether intermediate or final.

"Our position is, with respect to stocks of foreign corporations, that neither the telegrams sent by the Texas office to the New York office transmitting the offer to sell, nor the telegram from the New York office to the Texas office advising that a sale has been made, nor the confirmation of the sale mailed to the customer from out of the state, nor the receipt for the certificates in cases in which they are delivered by the customer to the Texas office, nor memoranda made on the books of the Texas office, is taxable under the language of the statute, and that if the language should be construed as taxing such telegrams, receipts, confirmations, and memoranda, the statute will be invalid. In support of our position we cite the case of J. M. Lee, Comptroller of the State of Florida, vs. J. P. Bickell, 292 U. S. 415.

" * * * ."

Unlike the factual statements presented for our consideration by your fourth and fifth questions, the above facts present an instance where shares or certificates of stock are sold or transferred, not between cit-

izens of Texas and New York, acting as principals, in their own behalf, but rather where the sale or transfer is effected through the medium of buying brokers and selling brokers, who meet on the floor of the Exchange in New York and consummate, not only the executory agreement or contract to sell but likewise the executed contract of sale and the delivery of the shares or certificates.

A factual situation identical to the above was before the Supreme Court of the United States in the case of LEE vs. BICKELL, 78 L. Ed. 1337, 292 U.S. 415, and the court held, under a tax statute of Florida substantially identical, upon this point, to the Act before us, that the scheme of said statute was to tax the transfer of shares by stamps affixed to those writings only which, in a practical sense, are the repository of the agreement or the instruments or vehicles for the change of title, and not to tax mere copies of memoranda ancillary to transactions consummated outside the state, and hence the excise stock transfer tax would not be collectible by the tax authorities of Florida.

However, this decision does not foreclose the question of the accrual of the tax under the Texas statute, if the shares or certificates of stock purchased under the facts outlined, are transferred in the state of Texas, upon the official stock transfer books and records of the corporations involved or by their transfer agent in this state, if any. Neither the decision adverted to nor the facts stated, supra, involve such transfer, but we hold that if such transfer occurred in Texas it is taxable, despite the fact that each and every other taxable act or transaction named in the statute occurred in the state of New York.

The next question submitted by you, through the above mentioned letter, is quoted therefrom as follows:

"Section 6 of Article XV provides that every person, firm, company, association, corporation, or business conducted by a trustee or trustees, engaged in whole or in part in the making or negotiating of sales, agreements

to sell, deliveries or transfers of shares or
certificates taxable under this Article, or con-
ducting or transacting a brokerage business,
shall keep or cause to be kept at some accessi-
ble place within the State of Texas, a just
and true book of account, in such form as may
be prescribed by the Comptroller, etc.

"We should like to know whether you con-
strue this language as applying to a person
who telephones or telegraphs an order to sell
his own stock to a New York broker and forwards
the stock by mail or express to such New York
broker. Such person would be engaged in part
in the making or negotiating of sales and de-
liveries or transfers of shares or certificates
of stock.

"We should also like to know whether you
construe Section 6 as requiring the Stock Ex-
change broker, who has a local office in Texas
and who merely transmits offers to sell to an
out of the state office and, when the offer is
accepted, receives a telegram from the out of
the state office reporting the sale, and in
cases in which the certificates are in posses-
sion of the Texas customer gives him a receipt
for such certificates and forwards them to the
out of the state office for delivery, must keep
books, on a form prescribed by the comptroller,
showing such transactions.

" * * * ."

This question has two phases:

(1) records to be kept by persons, firms
    or corporations making or negotiating
    sales, agreements to sell, deliveries
    or transfers of shares or certificates
    of stock in their own behalf, as prin-
    cipals, and,

(2) persons, firms or corporations con-

Hon. George H. Sheppard, Page 18

ducting or transacting a brokerage business.

Section 6 of the Act, insofar as pertinent, reads as follows:

"Every person, firm, company, association, corporation or business conducted by a trustee or trustees, engaged in whole or in part in the making or negotiating of sales, agreements to sell, deliveries or transfers of shares or certificates taxable under this Article, or conducting or transacting a brokerage business, shall keep or cause to be kept at some accessible place within the State of Texas, a just and true book of account, in such form as may be prescribed by the Comptroller, wherein shall be plainly and legibly recorded in separate columns, the date of making every sale, agreement to sell, delivery or transfer of such shares or certificates, the name and the number of shares thereof, the face value, the name of the seller or transferrer, the name of the purchaser or transferee, the face value of the adhesive stamps affixed and the identifying number of the bill or memorandum of sale used as provided for herein. This book shall also have recorded therein each separate purchase of stock transfer stamps, showing the date, the amount and from whom purchased." (Emphasis supplied).

It is apparent that the first portion of the above section applies to a person who telephones or telegraphs an order to sell his own stock to a New York broker and forwards the stock by mail or express to such New York broker. We do not pass upon the question of whether such person is subject to the tax, because same is not requested and sufficient facts are not before us. Moreover, the statutory duty to keep records is imposed upon every person, firm, corporation, etc. "engaged in whole or in part in the making or negotiating of sales, agreements to sell, deliveries or transfers of shares

Hon. George H. Sheppard, Page 19

or certificates", regardless of whether or not such person is himself or itself liable for the tax. However, only such records are required to be kept as reflect taxable transactions and if, under the hypothetical case given, such transactions are not taxable (which we do not pass upon because sufficient facts are not given regarding transfers, etc.) no records of such transactions will be required to be kept. This is patent from the underscored portions of Section 6, indicating that the only records required to be kept are those pertinent to taxable transactions, rather than any and all records involving stock transfers.

With reference to that phase of your last question regarding the requirement, under Section 6 of the Act, that persons or corporations "conducting or transacting a brokerage business" shall keep the described records, we are of the opinion that, under the facts stated, no taxable transaction or act transpires in Texas, and hence the local office of the Stock Exchange Broker will not be required to keep a record of such transaction. However, no statement appears with reference to the transfer of such shares or certificates of stock upon the stock transfer books or by a transfer agent but if such does transpire in Texas, we wish to point out that the local office of said broker will be required to keep the full and complete records of the entire transaction, required by the statute.

Trusting the foregoing fully answers your many inquiries, we are

APPROVED AUG 6, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

PMN:ob

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr.
        Assistant

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE